IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA :

    v. : Criminal No. DKC 11-0171

DARNELL DAVIS, et al. :

**MEMORANDUM OPINION AND ORDER**

By a second superseding indictment filed November 30, 2011, the Government charged Defendants Darnell Davis, Ronnell Davis, and Cortez Maurice Mallory with crimes related to the armed robbery of a bank on January 11, 2011 (counts one and two; together, "the bank robbery"), and the larceny and attempted larceny of two automated teller machines on February 8, 2011 (counts five and six; together, "the ATM larcenies").[1] The third count charges Darnell Davis with possession of a stolen vehicle in violation of 18 U.S.C. § 2313 – specifically, a black 2008 Dodge Charger alleged to have been used in the bank robbery – and the fourth count charges Ronnell Davis with money laundering, in violation of 18 U.S.C. § 1957(a), related to his

---

[1] Specifically, count one alleges a violation of 18 U.S.C. §§ 2213(a) (first paragraph) and (f); count two alleges use of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii); count five alleges a violation of 18 U.S.C. §§ 2113(a) (second paragraph) and (f); and count six alleges a violation of 18 U.S.C. §§ 2113(b) and (f).

purchase of a vehicle using a share of the proceeds from the bank robbery.

On October 14, 2011, Mallory and Ronnell Davis separately filed motions to sever (ECF Nos. 54, 59) and Darnell Davis moved to suppress evidence acquired by the warrantless use of a Global Positioning System ("GPS") device (ECF No. 57). A motions hearing was held on December 9, 2011, and the court reserved its decision pending a written opinion, which is provided herein.

**I.  Background**

The following facts were proffered by the Government at the motions hearing and are not challenged by Defendants for purposes of the instant motions.[2] Defendants Darnell and Ronnell Davis are fraternal twins; Defendant Mallory is a long-time friend of the Davis brothers. All three defendants shared an interest for a number of years in buying and selling cars. The purchase funds for such cars were often obtained through Defendants' theft of wheels and rims from other vehicles.

In or around January 2011, one or more defendants learned from two employees at a Wachovia Bank branch in Landover, Maryland, that, at a certain date and time, a large quantity of cash would be carried across the bank floor and loaded into the

---

[2] Defendants conceded at the motions hearing that, in deciding the joinder and severance issues, the court was permitted to look beyond the indictment and consider the Government's proffer of evidence.

2

bank's automated teller machine ("ATM").  Defendants made plans to steal that money before it could be loaded into the ATM.  In preparing for the robbery, Darnell Davis obtained a stolen, black 2008 Dodge Charger for use as the getaway car.  He fitted it with temporary tags stolen from another Dodge Charger and obscured the vehicle identification number in order to prevent identification by police.

The plan was executed on January 11, 2011.  On that date, two of the defendants – carrying guns and wearing masks, gloves, and dark clothing – entered the bank while a third defendant waited outside in the driver's seat of the stolen Charger.  The gunmen grabbed a bag containing $90,000 in cash designated for re-filling the ATM, ran from the bank, and jumped in the Charger, which sped away.  In the weeks after the bank robbery, Defendant Darnell Davis purchased a Cadillac Escalade, in cash, from an individual in Maryland; Mallory purchased a BMW, in cash, from Darnell Davis; and Ronnell Davis purchased a 2009 Dodge Challenger, in cash, from a dealership in New York City.

The Davis brothers became suspects in the bank robbery based on information provided to police by an unindicted co-conspirator.  Through surveillance, law enforcement officers observed Darnell Davis driving what they believed to be the stolen Dodge Charger used in the bank robbery.  Without obtaining a warrant, they attached a GPS device to the Charger:

> The GPS device was placed on the vehicle to allow police to track the vehicle when it was in motion, to prevent or solve crimes being committed with the use of the Charger. The GPS device would transmit a signal to a laptop computer in the possession of an FBI agent whenever the vehicle would move. There was no alarm that would sound or flash whenever the vehicle moved and the agent would have to log on to the computer to be able to check if the vehicle was moving. While in service, the GPS device placed the Charger at the location of various crimes, including the theft of automobile wheels and rims in the region.

(ECF No. 68, at 10).

Meanwhile, according to the Government's proffer, Defendants planned another crime. Having learned from the bank robbery that substantial sums of money were loaded into the vaults of ATMs, they decided to steal from an ATM rather than a physical bank. In planning for this offense, Defendants again obtained a stolen vehicle – this time, a black Nissan Pathfinder – obscured its vehicle identification number, and fitted it with stolen license plates. In the early morning hours of February 8, 2011, Defendants – wearing masks, gloves, and dark clothing – drove the stolen Pathfinder to a PNC bank branch in Greenbelt, Maryland, and attempted to break into an exterior ATM. They were unable to breach its vault, however, and no money was taken. Approximately 45 minutes later, they entered an office building in Clinton, Maryland, where they successfully broke

into the vault of an ATM operated by the United States Postal Service Federal Credit Union, stealing approximately $8,000.

**II. Motions to Sever**

Defendants argue, under Federal Rule of Criminal Procedure 8(b), that the Government improperly joined (1) counts one and two (the bank robbery) with counts five and six (the ATM larcenies), and (2) counts three (possession of a stolen vehicle against Darnell Davis) and four (money laundering against Ronnell Davis) with each other or with any other count. If joinder was proper, Defendants further contend that severance is warranted under Rule 14(a). The Government insists that the defendants and offenses were properly joined because all of the charged offenses arise from a common scheme involving the three defendants, and that severance is unnecessary because the risk of prejudice is minimal.

In both the motion papers and at the hearing, the parties confuse the issues of misjoinder, on the one hand, and severance, on the other. Although the analyses of these issues overlap in some respects, they are decidedly distinct. The question of whether defendants and offenses are properly joined in an indictment depends on whether the defendants are "alleged to have participated in the same act or transaction or in the same series of acts or transactions, constituting an offense or offenses." Fed.R.Crim.P. 8(b). Only upon finding that the

defendants were properly joined, under Rule 8(b), may the court go on to consider whether "there is a serious risk that a joint trial would . . . prevent the jury from making a reliable judgment about guilt or innocence," under Rule 14(a). *United States v. Cardwell*, 433 F.3d 378, 387 (4th Cir. 2005) (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)). Consideration of the latter issue involves the exercise of discretion. *See United States v. Hackley*, --- F.3d ----, 2011 WL 6034783, at *9 (4th Cir. 2011) ("Federal Rule of Criminal Procedure 14(a) gives courts discretion to sever offenses if joinder in a single trial would prejudice a defendant."). Consideration of the former does not. *See United States v. Chinchic*, 655 F.2d 547, 550 (4th Cir. 1981) ("[T]he joinder of defendants and offenses totally unconnected is prohibited by Rule 8(b). This is not a matter of discretion[.]") (quoting *Ingram v. United States*, 272 F.2d 567, 569 (4th Cir. 1959)).

Accordingly, the court must first consider whether the defendants and offenses were properly joined in the second superseding indictment under Rule 8(b). The Fourth Circuit has defined the "level of relatedness required to satisfy Rule 8(b)'s requirements" as follows:

> "Separate acts constituting separate offenses are sufficiently related to be within the same series if they arise out of a common plan or scheme." *United States v. Porter*, 821 F.2d 968, 972 (4th Cir.), *cert.*

6

> *denied*, 485 U.S. 934, 108 S.Ct. 1108, 99
> L.Ed.2d 269 (1987). "There must be a series
> of acts unified by some substantial identity
> of facts or participants." *Id*. "We have
> defined 'transaction' flexibly, as 'implying
> a connection or logical relationship rather
> than immediateness.'" *United States v.
> LaRouche*, 896 F.2d 815, 830 n. 5 (4th Cir.
> 1990), *quoting United States v. Carmichael*,
> 685 F.2d 903, 910 (4th Cir. 1982).

*United States v. Haney*, 914 F.2d 602, 606 (4th Cir. 1990); *see also United States v. Santoni*, 585 F.2d 667, 673 (4th Cir. 1978) (a "series of acts or transactions" under Rule 8(b) "logically includes those transactions so interconnected in time, place and manner as to constitute a common scheme or plan").

Although the Government has not charged a conspiracy among the defendants in this case, the evidence it proffered at the motions hearing painted a picture of an overarching criminal enterprise involving these three defendants. The court has little difficulty in finding that the bank robbery charges (counts one and two), the ATM larceny charges (counts five and six), and the charge related to the stolen Dodge Charger (count three) were properly joined because these offenses clearly arise from "a series of acts unified by some substantial identity of facts or participants." *Haney*, 914 F.2d at 606. Indeed, all three defendants are alleged to have committed both the bank robbery and the ATM larcenies, and all defendants are connected with the stolen Dodge Charger used as the getaway car in the

bank robbery. Moreover, the bank robbery and ATM larcenies are linked by time, place, and manner. *See Santoni*, 585 F.2d at 673. Both sets of crimes occurred in Prince George's County, Maryland, less than one month apart; the Government has proffered that there was continuity in planning among the defendants in these offenses; and while the bank robbery involved strong-arm tactics that the ATM larcenies did not, the *modus operandi* was similar in other respects (*i.e.*, use of a stolen car with stolen temporary tags; dressing in masks, gloves, and dark clothing). Insofar as Defendants appear to have learned from their experience in the bank robbery that stealing from ATMs, which involves considerably less risk, could be equally lucrative, the second set of offenses stemmed from the first. Thus, there is a logical relationship between the offenses charged in counts one, two, three, five, and six, and these counts were properly joined in the indictment.

A closer question is presented by the joinder of the money laundering count against Ronnell Davis. As to count four, there are essentially two views of the proffered evidence: (1) that the defendants divided the proceeds from the bank robbery and each independently chose to buy a car with his respective share, or (2) that buying cars with the proceeds from the bank robbery was part of the plan from the outset. To the extent that the proffered evidence supports the first view, count four would be

improperly joined because it would not be sufficiently related to any of the other defendants or offenses. Indeed, if the manner in which a defendant spends the proceeds from a robbery could be properly joined in a multi-defendant indictment with the robbery itself, one can imagine an endless variety of offenses that could be joined having no logical connection to the other defendants or crimes charged. On the other hand, if the objective of the bank robbery was for all defendants to obtain money for the purchase of cars, then the expenditure of the proceeds in accordance with that plan would seem to be part of "the same series of acts or transactions, constituting an offense or offenses." Fed.R.Crim.P. 8(b).

The Government alleges – without challenge at this point – that each of the defendants bought cars, in cash, shortly after the bank robbery. The Government asserted at the motions hearing that Ronnell Davis' purchase was the only chargeable offense because the Dodge Challenger was bought outside the State of Maryland and a financial institution was involved. In attempting to downplay the significance of the vehicle purchases, defense counsel argued that this was not out of the ordinary for Defendants – that they had all been in the business of buying and selling cars for many years and, in fact, that this was a primary source of income. This argument tends to support the view that the goal of the bank robbery was to obtain

9

the purchase funds for cars, and that the money laundering count is, therefore, "related to, and . . . logically and intimately connected together with," the bank robbery. *See United States v. Hawkins*, 589 F.3d 694, 702 (4th Cir. 2009) (quoting *United States v. Cole*, 857 F.2d 971, 973 (4th Cir. 1988)).

"Acts or transactions form a 'series' within the meaning of [Rule 8(b)] if they 'constitut[e] parts of a common scheme or plan.'" *United States v. Halliman*, 923 F.2d 873, 883 (D.C. Cir. 1991) (quoting *United States v. Perry*, 731 F.2d 985, 990 (D.C. Cir. 1984)). Although the issue is somewhat close, insofar as the Government has proffered evidence that buying cars with the proceeds of the bank robbery was part of Defendants' common scheme or plan, the court finds that the money laundering offense was properly joined.

Federal Rule of Criminal Procedure 14(a) provides that even where joinder is proper under Rule 8, severance may be necessary "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant[.]" The Supreme Court has recognized that where defendants are properly joined for trial, "a district court should grant severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. "Generally, individuals indicted

10

together should be tried together, and a defendant is not entitled to severance merely because separate trials would more likely result in acquittal, or because the evidence against one defendant is not as strong as that against the other." *United States v. Khan*, 461 F.3d 477, 490-91 (4th Cir. 2006) (internal marks and citations omitted). "The party seeking severance bears the burden of demonstrating 'a strong showing of prejudice[.]'" *United States v. Branch*, 537 F.3d 328, 341 (4th Cir. 2008) (quoting *United States v. Goldman*, 750 F.2d 1221, 1225 (4th Cir. 1984)).

Defendants have not met their respective burdens here. They generally argue that counts one and two should be severed from counts five and six because "maintaining the separation and distinction between the counts relating to the Wachovia robbery and the counts relating to the ATM larcenies would be virtually impossible" for a jury. (ECF No. 59 ¶ 15). According to Defendants, "the mere fact that there are two crimes against banks being tried . . . [would] become[] a fact with persuasive value in and of itself." (*Id.*). They offer no explanation as to why a jury would be unable to keep these counts separate, however, and conclusory allegations that the jury would improperly cumulate evidence are insufficient to meet their heavy burden on a motion to sever. *See United States v. Williams*, Criminal Action No. 4:09cr91, 2010 WL 4702351, at *5

(E.D.Va. Oct. 28, 2010) (citing *United States v. Tolliver*, Nos. 08-5204, 08-5217, 2010 WL 2749599, at *5 (4th Cir. July 13, 2010) (unpublished)). In fact, their argument for misjoinder is based, in part, on the dissimilarities between the two sets of crimes. They assert, for example, that the two sets of crimes occurred approximately one month apart; that the bank robbery occurred during the day, while the ATM larcenies occurred at night; that guns were allegedly brandished on the first occasion, but not on the second; and that different stolen cars were used. These facts are only marginally relevant to the joinder analysis, but they significantly undercut Defendants' argument for severance under Rule 14(a). There is little reason to believe that a jury would be unable to keep the two sets of counts separate, and "limiting instructions . . . will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539.

While Defendants' arguments as to counts three and four focused almost exclusively on misjoinder under Rule 8(b), rather than severance under Rule 14(a), Mallory argued in his motion papers that "[t]here is a strong likelihood that the jury may well use the evidence of counts Three and Four, in which [he] is not charged[,] to infer a criminal disposition on the part of [him]." (ECF No. 54, at 6). In other words, he purports to be concerned that a jury considering evidence related to his participation in an armed bank robbery and breaking into and

12

stealing money from ATMs will be unduly influenced by the fact that one of his co-defendants allegedly possessed a stolen vehicle and another used the proceeds from the bank robbery to buy a car. This argument is facially implausible. In any event, he has failed to show that severance of these counts is warranted and any risk of prejudice may be addressed by a limiting instruction.[3]

**III. Motion to Suppress**

Darnell Davis has moved to suppress evidence obtained as a result of the GPS device placed on the Dodge Charger without a warrant, relying principally on *United States v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010), which is presently pending before the Supreme Court. The Government asserts that Defendant has no reasonable expectation of privacy in the stolen Charger and, therefore, lacks standing to challenge any search.

Generally, a defendant cannot claim protection under the Fourth Amendment unless he "has a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). Such an expectation must be personal, reasonable, and have "a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to

---

[3] Mallory argued at length in his motion papers about a potential *Bruton* problem. These fears were allayed by the Government at the motions hearing, however, and counsel agreed this was no longer an issue.

understandings that are recognized and permitted by society." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (quoting *Rakas*, 439 U.S. at 143-44, and n. 12). The Fourth Circuit has held that a defendant does not have a reasonable expectation of privacy in a stolen vehicle, and therefore lacks standing to object to a search of the vehicle. *See United States v. Hargrove*, 647 F.2d 411, 412 (4th Cir. 1981). "The defendant bears the burden of proving that he has a reasonable expectation of privacy," and only if he has such an expectation must the court then "determine the reasonableness of the search and seizure." *United States v. Rusher*, 966 F.2d 868, 874 (4th Cir. 1992); *see also Rakas*, 439 U.S. at 130 n. 1.

Defendant asserted in his motion papers that "[a]t a hearing on this motion, the evidence will show that the defendant was not involved with the alleged theft of the automobile, and in fact he purchased the automobile from a third party months after the vehicle is alleged to have been reported stolen." (ECF No. 57, at 10). No such evidence was presented at the hearing, however. The court raised the possibility that although Defendant had no standing to contest the placement of the GPS device, he might nevertheless have standing with respect to the monitoring of the movement of the Charger. The United States Court of Appeals for the Fifth Circuit made this distinction in *United States v. Hernandez*, 647 F.3d 216 (5th Cir.

2011). In that case, the court held that the defendant lacked standing to challenge the placement of a GPS device on the undercarriage of his brother's truck, but did have standing to challenge "the use of the GPS device to follow the truck's path." *Hernandez*, 647 F.3d at 220. That distinction was based, however, on the fact that the defendant was driving the truck with his brother's permission. *See id.* (quoting *United States v. Lee*, 898 F.2d 1034, 1038 (5th Cir. 1990) ("where a person has borrowed an automobile from another, with the other's consent, the borrower becomes a lawful possessor of the vehicle and thus has standing to challenge its search.")). Here, Defendant has not established that he had a reasonable expectation of privacy in the Dodge Charger or the monitoring of its movement on the highways. Thus, he lacks standing to bring his Fourth Amendment challenge, and the court does not reach the question of whether the Government's search was reasonable.

## IV. Conclusion

For the foregoing reasons, it is this 19th day of December, 2011, by the United States District Court for the District of Maryland, ORDERED that:

1. The motions to adopt and conform filed by Defendants Cortez Maurice Mallory and Darnell Davis (ECF Nos. 56, 58) BE, and the same hereby ARE, GRANTED;

2.   The motions to sever filed by Defendants Mallory and Ronnell Davis (ECF Nos. 54, 59) BE, and the same hereby ARE, DENIED;

    3.   The motion to suppress filed by Defendant Darnell Davis (ECF No. 57), BE, and the same hereby IS, DENIED; and

    4.   The clerk will transmit copies of this Memorandum Opinion and Order to counsel for the parties.


                                        _____/s/_____
                                        DEBORAH K. CHASANOW
                                        United States District Judge